EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ivonne Lucero Cuevas<br><br>Querellante-recurrida<br><br>v.<br><br>The San Juan Star Company<br><br>Querellada-peticionaria | Certiorari<br><br>2003 TSPR 80<br><br>159 DPR _____ |

Número del Caso: CC-2001-811


Fecha: 16 de mayo de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional I


Juez Ponente:
                    Hon. Charles A. Cordero Peña

Abogado de la Parte Peticionaria:
                    Lcdo. Roberto O. Maldonado Nieves

Abogado de la Parte Recurrida:
                    Lcdo. José Velaz Ortiz


Materia: Reclamación de Salarios y Compensación por Despido sin
        Justa Causa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ivonne Lucero Cuevas

    Querellante-recurrida

       vs.               CC-2001-811        CERTIORARI

The San Juan Star Company

    Querellada-peticionaria


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 16 de mayo de 2003

La controversia que hoy ocupa nuestra atención nos brinda la oportunidad de expresarnos en torno al mecanismo de emplazamiento establecido en la Sección 3 de la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3120. Particularmente, en cuanto dispone que: "Si no se encontrare al querellado, se diligenciará la orden <u>en la persona que en cualquier forma represente a dicho querellado</u> en la fábrica, taller, establecimiento, finca o sitio en que se realizó el trabajo que dio origen a la reclamación o en su oficina o residencia." (énfasis nuestro). Veamos.

I.

El 16 de febrero de 2000 Ivonne Lucero Cuevas presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una querella al amparo de la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. secs. 3118, *et seq.*, (en adelante, "Ley Núm. 2"). En la misma reclamó del San Juan Star Company (en adelante, "San Juan Star") el pago de seis mil dólares ($6,000.00) por concepto de comisiones devengadas y no pagadas, más la doble penalidad dispuesta por ley; setecientos cincuenta dólares ($750.00) como pago de unos gastos alegadamente adeudados por concepto de "car allowance"; una suma correspondiente a 178 horas de vacaciones acumuladas y no disfrutadas ni pagadas; once mil quinientos dólares ($11,500.00) como compensación  por despido sin justa causa más las costas del procedimiento; y seis mil dólares ($6,000.00) por concepto de honorarios de abogados.[1]

---

[1] En síntesis, la recurrida alegó en su querella  que trabajó para el San Juan Star sujeta a un contrato por tiempo indeterminado  desde mayo de 1994 hasta el 16 de julio de  1999. Sostuvo que se vio obligada a renunciar como consecuencia de la actuación de la querellada al incumplir reiteradamente con su obligación de pagarle comisiones, reembolsarle gastos de auto y al no reconocerle el derecho a acumular y disfrutar de licencia por vacaciones. Adujo, además, que la querellada le redujo injustificada e indebidamente sus clientes afectando la posibilidad de cobrar comisiones y que desató una actitud "amenazante, humillante y de imputaciones falsas en su contra creándole un ambiente hostil de trabajo", que unido a lo demás "no le dejaron otra alternativa que tener que
(Continúa . . .)

El 27 de marzo de 2000 un alguacil auxiliar compareció a las facilidades del periódico San Juan Star y allí entregó copia de la demanda y de la orden de citación y emplazamiento a Roberto Ortiz Mariano. En la certificación al dorso de la copia del emplazamiento colocó el nombre de éste y lo identificó como "Asistente del Presidente". Mediante moción de 13 de abril de 2000, la querellante Lucero Cuevas solicitó del Tribunal que, en virtud de lo dispuesto en la Sección 3 de la Ley Núm. 2, dictara sentencia en rebeldía contra el San Juan Star, en vista de que ésta no había sometido su contestación a la querella ni había solicitado prórroga para ello dentro del término dispuesto por ley.

Así las cosas, el 18 de abril de 2000, el San Juan Star, sin someterse a la jurisdicción del Tribunal, compareció ante dicho foro para impugnar el emplazamiento realizado, solicitando la anulación del mismo por no haberse diligenciado de conformidad con la legislación vigente. Acompañó a dicha solicitud una declaración jurada de Sara De la Vega Ramos, quien aseguró ser la Asistente del Presidente del San Juan Star, en la que se expresaba que Roberto Ortiz Mariano era un empleado asalariado del periódico que ganaba un jornal de $8.00 por hora. Aseveró, además, que éste no es ni ha sido miembro de la Junta de Directores del periódico, como tampoco oficial, agente de

renunciar a su empleo." Véase Querella, Apéndice de la Petición de Certiorari, págs. 1-2.

la corporación ni persona autorizada para recibir emplazamientos.

Tras varios trámites procesales, el 6 de octubre de 2000, el tribunal de instancia encontró válido el diligenciamiento del emplazamiento y dictó sentencia en rebeldía en contra de la peticionaria declarando "Ha lugar" la querella. Inconforme con dicho dictamen, el 27 de octubre de 2000, el San Juan Star acudió mediante recurso de apelación ante el Tribunal de Circuito de Apelaciones. Alegó, en síntesis, que el tribunal no había adquirido jurisdicción sobre la querellada al no haberla emplazado a través de una persona con capacidad para representar a dicha Corporación. En la alternativa, adujo que, ante la controversia de hechos en cuanto a la corrección del emplazamiento, el foro primario debió celebrarse una vista evidenciaria para dilucidar ese aspecto; ello como medida cautelar y para evitar una violación al debido proceso de ley que cobija a la parte querellada. Adujo, por último, que la partida de honorarios de abogados era excesiva.

El Tribunal del Circuito de Apelaciones, mediante sentencia emitida el 31 de agosto de 2001, confirmó el dictamen del foro primario. Sostuvo que el diligenciamiento del emplazamiento se efectuó correctamente. En esencia, fundamentó su dictamen en el caso León García v. Restaurante El Tropical, res. el 7 de junio de 2001, 2001 TSPR 81, interpretándolo a los efectos

de que, "un tribunal adquiere jurisdicción sobre la persona de un patrono querellado, al amparo del procedimiento sumario que provee la Ley. Núm. 2, <u>cuando el emplazamiento de dicha querella se diligencia en el lugar donde trabaja el [empleado] querellante</u>." (énfasis suplido). Resolvió que, para evaluar la corrección del emplazamiento, no era necesario celebrar una vista evidenciaria. Expresó, además, que habiéndose diligenciado el mismo en las oficinas del San Juan Star, a través de uno de sus empleados asalariados, era forzoso concluir que el patrono fue debidamente notificado del procedimiento en su contra a tenor con las disposiciones de la Ley Núm. 2. Por otra parte, sostuvo que la querella radicada contenía hechos bien alegados y específicos en los que se reclamaba una suma líquida y exigible de tal modo que se justificaba el haber dictado sentencia en rebeldía en contra de la querellada. Por último, resolvió que la partida de honorarios de abogado no era una punitiva, sino adecuada, por haberse concedido siguiendo la letra de la Ley Núm. 2 y dentro de lo establecido en la Ley Núm. 80 del 30 de mayo de 1976, 29 L.P.R.A. sec. 185k(b).

Insatisfecha con la actuación del tribunal apelativo intermedio, el San Juan Star acudió oportunamente --vía certiorari-- ante este Tribunal, imputándole al foro apelativo intermedio haber errado:

> ... al autorizar el emplazamiento de una corporación a través de un empleado que nada tenía que ver con la gerencia o administración de

la corporación violando su derecho al debido proceso de ley bajo la Sección 7 del Artículo II de la Constitución de Puerto Rico y bajo la Decimocuarta Enmiendas [sic] de la Constitución de Estados Unidos.

... al asumir jurisdicción sobre The San Juan Star Company a pesar de que dicha parte demandada no fue emplazada de conformidad con la Ley de Reclamaciones Laborales por la vía sumaria ni con las Reglas de Procedimiento Civil y la legislación vigente.

... al interpretar y aplicar incorrectamente la norma establecida por el Tribunal Supremo de Puerto Rico en <u>León García</u> v. <u>Restaurante Tropical</u>.

Además, señaló que el Tribunal de Primera Instancia incidió:

... al [no celebrar una vista evidenciaria] ante la controversia de hechos en lo que respecta a si The San Juan Star Company había sido o no correctamente emplazada ...

... al dictar sentencia sumaria en rebeldía a base de alegaciones conclusorias y determinaciones de derecho sin contar con prueba acreditativa de los hechos específicos al amparo de los cuales procedían los remedios reclamados.

... al imponer una suma excesiva de honorarios de abogado contra la parte demandada.

El 30 de noviembre de 2001 <u>expedimos</u> el recurso. Contando con la comparecencia de ambas partes, y estando en posición de resolver el recurso radicado, procedemos a así hacerlo. <u>Revocamos</u>. Veamos por qué.

II.

A.

Sabido es que la Ley Núm. 2 de 17 de octubre de 1961, ante, establece un procedimiento sumario para los casos de reclamaciones instadas por obreros y empleados contra sus patronos por servicios prestados.[2] Ríos Moya v. Industrial Optics, res. el 21 de agosto de 2001, 2001 TSPR 117; Berríos Heredia v. González, res. el 15 de junio de 2000, 2000 TSPR 87; Rivera Rivera v. Insular Wire Products, 140 D.P.R. 912, 921 (1996). La creación de dicha pieza legislativa responde a una clara e inequívoca política pública establecida por el Estado que busca abreviar el procedimiento de forma que sea lo menos oneroso posible para el obrero. Ríos Moya v. Industrial Optics, ante; Dávila v. Antilles Shipping, Inc., res. el 12 de febrero de 1999, 99 TSPR 12.

La naturaleza de este tipo de reclamación exige celeridad en su trámite para así lograr los propósitos legislativos de proteger el empleo, desalentar los despidos injustificados y proveerle al obrero despedido

---

[2] La Sección 1 de dicha ley dispone que el procedimiento sumario estará disponible para todo obrero que reclame de su patrono cualquier derecho o beneficio, o cualquier suma por concepto de compensación por trabajo o labor realizados para dicho patrono, o por compensación en caso de que el obrero haya sido despedido sin justa causa. 32 L.P.R.A. sec. 3118. Del mismo modo, estará disponible en aquellas instancias en que la Legislatura lo haya dispuesto expresamente en otras leyes protectoras de los trabajadores. Véase R. Delgado Zayas, Manual Informativo de Legislación Protectora del Trabajo de Puerto Rico, San Juan, 2001, pág. 351.

medios económicos para su subsistencia mientras consigue un nuevo empleo. Ruiz Rivas v. Col. San Agustín, res. el 5 de octubre de 2000, 2000 TSPR 147; Rodríguez Aguiar v. Syntex, res. el 21 de junio de 1999, 99 TSPR 97; Piñero González v. A.A.A., 146 D.P.R. 890 (1998). Dicho procedimiento fue instituido en aras de remediar la desigualdad económica existente entre las partes al instarse una reclamación de este tipo. León García v. Restaurante El Tropical, res. el 7 de junio de 2001, 2001 TSPR 81; Landrum Mills Corp. v. Tribunal Superior, 92 D.P.R. 689, 691-92 (1965).

A tenor con esa finalidad, se incorporaron a dicha legislación varias disposiciones que resultan ser favorables para el obrero.[3] De este modo se pretendió agilizar el trámite judicial evitando así que el patrono dilate innecesariamente el procedimiento judicial. Berríos Heredia v. González, ante.

---

[3] Algunas de estas disposiciones son: términos cortos para contestar la querella; criterios estrictos para conceder una prórroga para contestar la querella; un mecanismo especial para el emplazamiento del patrono; obligación de hacer una sola alegación responsiva; limitaciones en el uso de mecanismos de descubrimiento de prueba; criterios para la aplicación de las Reglas de Procedimiento Civil; prohibición de demandas o reconvenciones contra el obrero querellante; facultad del tribunal para dictar sentencia en rebeldía cuando el patrono querellado no cumple con los términos para contestar la querella; mecanismos de revisión y ejecución de las sentencias y embargo preventivo. Ruiz Rivas v. Col. San Agustín, ante; Rodríguez Aguiar v. Syntex, ante; Santiago v. Palmas del Mar, 143 D.P.R. 886, 892 (1997); Rivera Rivera v. Insular Wire Products, ante, a las págs. 923-24.

Cónsono con lo anterior, hemos enfatizado que la médula y esencia del trámite fijado por dicha Ley lo constituye, precisamente, el procesamiento sumario y la rápida disposición de la reclamación. Dávila v. Antilles Shipping, Inc., ante; Rodríguez Aguiar v. Syntex, ante; Santiago v. Palmas del Mar, 143 D.P.R. 886, 891 (1997); Resto Maldonado v. Galarza Rosario, 117 D.P.R. 458, 460 (1986); Díaz v. Hotel Miramar Corp., 103 D.P.R. 314, 316 (1975). En vista de que la naturaleza sumaria del procedimiento constituye su característica esencial, hemos insistido en exigir el respeto del mismo evitando que las partes desvirtúen dicho carácter especial y sumario. Ríos Moya v. Industrial Optics, ante; Dávila v. Antilles Shipping, Inc., ante; Mercado Cintrón v. Zeta Communications, Inc., 135 D.P.R. 737 (1994); Srio. del Trabajo v. J.C.Penny Co., Inc., 119 D.P.R. 660 (1987). Desprovista de esa característica sumaria resultaría un procedimiento ordinario más, incompatible con el mandato legislativo. Srio. del Trabajo v. J.C.Penny Co., Inc., ante, a la pág. 665; Resto Maldonado v. Galarza Rosario, ante, a la pág. 460.[4]

Ahora bien, a pesar del carácter sumario de la Ley Núm. 2, no fue la intención del legislador imponer un trámite procesal inflexible e injusto para el patrono

---

[4] Véase, además: A. Acevedo Colom, Legislación Protectora del Trabajo Comentada, 7ma. ed. rev., San Juan, 2001, pág. 377.

querellado. Rivera Rivera v. Insular Wire Products, ante, a la pág. 925. Ciertamente es norma reiterada que el carácter reparador de este procedimiento requiere que la ley sea interpretada liberalmente a favor del empleado. Ruiz Rivas v. Col. San Agustín, ante; Rodríguez Aguiar v. Syntex, ante; Piñero González v. A.A.A., ante, a la pág. 903. Ello no obstante, la Ley Núm. 2 no puede ser interpretada ni aplicada en el vacío y, aun ante casos que parezcan ser iguales, en ocasiones, los hechos de los mismos requerirán tratamientos distintos en aras de conseguir un resultado justo. Ello se traduce a que en ocasiones aplicaremos una disposición en forma enérgica, y en otras seremos más flexibles. Valentín v. Housing Promoters, 146 D.P.R. 712, 716 (1998); Román Cruz v. Díaz Rifas, 113 D.P.R. 500, 505 (1982).

"[E]l procedimiento sumario no es, ni puede ser, una carta en blanco para la concesión de remedios".[5] Si bien no se debe menoscabar el propósito reparador y protector que persigue la Ley, es menester recordar que resulta "esencial brindarle al patrono las oportunidades básicas del debido proceso de ley para defender sus derechos [adecuadamente]." Rivera Rivera v. Insular Wire Products, ante, a la pág. 922 (énfasis nuestro); Hernández Hernández v. Espinosa, 145 D.P.R. 248, 270 (1998). Véase, además: A.

---

[5] Véase Ruiz Rivas v. Col. San Agustín, ante; Hernández Hernández v. Espinosa, ante, a la pág. 271; Rivera Rivera v. Insular Wire Products, ante, a la pág. 928; Díaz v. Hotel Miramar, ante, a la pág. 324.(énfasis nuestro).

Acevedo Colom, Legislación Protectora del Trabajo Comentada, 7ma. ed. rev., San Juan, 2001, págs. 377-78.


                                    B.

     En el presente caso se cuestiona la adecuacidad del emplazamiento efectuado al San Juan Star.  En vista de que el derecho a un debido proceso de ley juega un papel fundamental en dicha controversia resulta necesario expresarnos brevemente al respecto.

     La Sección 7 del Artículo II de la Constitución de Puerto Rico, al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley. Const. E.L.A. Art II, Sec. 7, 1 L.P.R.A. El debido proceso de ley exige que al demandado se le notifique adecuadamente de la reclamación en su contra y que, además, se le brinde la oportunidad de ser oído antes de que se adjudiquen sus derechos. Véase: Álvarez Elvira v. Arias Ferrer, res. el 18 de marzo de 2002, 2002 TSPR 31; León García v. Restaurante El Tropical, ante; Industrial Siderúrgica v. Thyssen, 114 D.P.R. 548, 559 (1983). El mecanismo para cumplir con esta exigencia constitucional lo es el emplazamiento. León García v. Restaurante El Tropical, ante; Rodríguez v. Nasrallah, 118 D.P.R. 93 (1986).

     El emplazamiento es el mecanismo procesal mediante el cual el tribunal hace efectiva su jurisdicción sobre la

persona del demandado. First Bank of P.R. v. Inmob. Nac., Inc., 144 D.P.R. 901, 913 (1998); Peguero v. Hernández Pellot, 139 D.P.R. 487, 494 (1995). Hemos expresado, reiteradamente, que la citación o emplazamiento representa el paso inaugural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial y su adulteración constituye una flagrante violación al trato justo. Álvarez Elvira v. Arias Ferrer, ante; Acosta v. Marietta Services, 142 D.P.R. 927, 931 (1997); J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2000, Ed. Publicaciones JTS, T. I, pág. 138. Es por ello que los requisitos para emplazar, conforme a la ley o a las reglas de procedimiento, deben cumplirse estrictamente. De otro modo, el tribunal estará impedido de actuar sobre la persona del demandado. Álvarez Elvira v. Arias Ferrer, ante; Rivera Báez v. Jaume Andujar, res. el 28 de junio de 2002, 2002 TSPR 100; Rodríguez v. Nasrallah, ante, a la pág. 99.

Consistentemente, hemos señalado, que toda sentencia dictada contra un demandado que no ha sido emplazado o notificado conforme a derecho es inválida y no puede ser ejecutada.[6] Álvarez Elvira v. Arias Ferrer, ante. Se trata

---

[6] Tal postura ha sido igualmente sostenida en la jurisdicción norteamericana. A los efectos se ha manifestado que "a failure to provide the defendant with proper notice of the action and an opportunity to be heard will subject a judgement to collateral attack". Wright & Miller, Federal Practice and Procedure, Civil 3d. sec. 1074, pág. 357 (2002). Del mismo modo, se ha comentado que "[i]f a defendant is not properly served, any subsequent judicial proceedings with regard to that defendant are

(Continúa . . .)

de un caso de nulidad radical por imperativo constitucional. <u>Calderón Molina</u> v. <u>Federal Land Bank</u>, 89 D.P.R. 704, 709 (1963). En virtud de ello se ha dicho que "[u]na sentencia dictada sin tal notificación y oportunidad carece de todos los atributos de una determinación judicial; es una usurpación y opresión judicial y nunca puede ser sostenida donde la justicia administra justicieramente." J.A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, ante, a la pág. 138.

III.

En el caso de autos está en controversia la corrección del emplazamiento que se le hizo al San Juan Star al amparo de la Ley Núm. 2.

El peticionario San Juan Star sostiene que la Sección 3 de la Ley Núm. 2 no puede interpretarse a los efectos de que se permite emplazar al patrono a través de cualquier persona que se encuentre en el lugar de trabajo, sino que, claramente, dispone que el emplazamiento debe efectuarse mediante persona que <u>represente</u> al patrono. En virtud de ello alega que, en la medida en que la persona que recibió el emplazamiento no era miembro de la Junta de Directores, oficial, agente ni persona autorizada para recibir el emplazamiento, el diligenciamiento del mismo se efectuó defectuosamente. Por tal razón, aduce que la sentencia en

---

invalid." 1 <u>Moore's Federal Practice</u>, 3rd. ed. sec. 4.03[2], (1997).

rebeldía dictada en su contra violó su debido proceso de ley. Sostiene, además, que existiendo una controversia de hechos en cuanto a la corrección del diligenciamiento debió, al menos, celebrarse una vista evidenciaria para dilucidar dicho asunto. Por su parte, la querellante recurrida sostiene que el emplazamiento efectuado en las oficinas del patrono querellado a través de un empleado de éste, fue uno válido y constituyó notificación suficiente para el patrono. El Tribunal de Circuito de Apelaciones avaló dicha postura y utilizó como fundamento principal el caso de León García v. Restaurante El Tropical, ante.

La Sección 3 de la Ley Núm. 2, en lo pertinente, dispone que:

> El alguacil o una persona particular diligenciará la notificación del secretario del tribunal al querellado. Si no se encontrare al querellado, se diligenciará la orden en la persona que en cualquier forma represente a dicho querellado en la fábrica, taller, establecimiento, finca o sitio en que se realizó el trabajo que dio origen a la reclamación o en su oficina o residencia. Si el querellado no pudiera ser emplazado en la forma antes dispuesta se hará su citación de acuerdo con lo que dispongan las Reglas de Procedimiento Civil para esos casos. 32 L.P.R.A. sec. 3120 (énfasis nuestro).

Del texto de la referida sección se desprende que se proveen tres alternativas de emplazamiento para tres situaciones distintas. En primer lugar, se dispone para los casos en que sea posible emplazar personalmente al patrono querellado. En segundo lugar, provee para aquellas ocasiones en que no se encuentre al patrono, en cuyo caso

se diligenciará el emplazamiento en cualquier persona que lo represente. Por último, permite emplazar conforme a lo dispuesto en las Reglas de Procedimiento Civil cuando no sea posible hacerlo en las dos situaciones anteriores.

Siendo el patrono, en el presente caso, una corporación, forzoso es concluir que nos encontramos ante la segunda situación descrita anteriormente. Ello debido a que, al no tratarse de una persona natural, resulta inadecuado referirnos a la posibilidad de un emplazamiento personal. Es en ese escenario en el que enfocamos nuestro análisis.

Ciertamente, el mecanismo de emplazamiento establecido por la Ley Núm. 2 es uno amplio y especial creado para cumplir con el propósito del Legislador de establecer un medio rápido y eficiente a través del cual el obrero pueda notificarle al patrono sobre su reclamación laboral. León García v. Restaurante El Tropical, ante. No obstante lo anterior, no podemos perder de vista que del propio texto que hemos transcrito surgen dos elementos o componentes para el emplazamiento del patrono cuando éste no puede ser emplazado personalmente. El primero de estos componentes se refiere al lugar donde se permitirá el emplazamiento. A tales efectos, dispone una amplia gama de lugares donde se podrá efectuar el mismo, a saber: en la fábrica, taller, establecimiento, finca, sitio en el que se realizó el trabajo que dio origen a la reclamación, oficina o residencia. El otro

componente se refiere a <u>la persona que podrá recibir el emplazamiento</u>, de tal forma que el mismo constituya notificación suficiente para el patrono. A esos fines la Ley dispone que se diligenciará la orden en la persona <u>que en cualquier forma represente al querellado</u>.

Es precisamente ese último componente el <u>punto neurálgico</u> de la presente controversia. ¿Procede que adoptemos la interpretación de la recurrida en cuanto plantea que la Ley permite diligenciar el emplazamiento a través de <u>cualquier persona</u> después que se encuentre en uno de los lugares permitidos por ley para llevarlo a cabo, o, por el contrario, debemos entender que la Ley exige que la persona a quien se le entregue el emplazamiento posea, al menos, <u>cierta capacidad para representar al patrono</u>? No hay duda que, la interpretación que adoptemos, <u>no</u> puede frustrar el carácter sumario y el propósito reparador que persigue la Ley. <u>Ahora bien</u>, ese propósito no nos puede llevar a una interpretación que violente el derecho constitucional de la otra parte a un debido proceso de ley.

Es importante destacar que del texto de la Ley surge el elemento de representación. Ello en vista de que el legislador no se limitó a decir que el diligenciamiento se haría en cualquier persona, sino que dispuso que se efectuaría en la persona que en cualquier forma <u>represente</u> a dicho querellado. Por tanto resulta necesario abundar en torno a dicho concepto.

Ser representante de alguien ha sido definido como "la persona que en virtud de una autorización legal o convencional, actúa en nombre de otra, ejerciendo prerrogativas jurídicas de ésta." J.A. Garrone, *Diccionario Jurídico*, Buenos Aires, Ed. Abeledo-Perrot, 1988, T.III, pág. 291. También se ha dicho que constituye la "[i]nstitución en virtud de la cual una persona puede realizar un acto jurídico por otra ocupando su lugar." De Pina Vara, *Diccionario de Derecho*, 13ra. ed., México, Ed. Porrúa, 1985, pág. 428. Es obrar en nombre de otra o sustituir a una persona en cuyo nombre se actúa. G. Cabanellas, *Diccionario Enciclopédico de Derecho Usual*, 20ma. ed., Buenos Aires, Ed. Heliasta, 1986, T. VII, págs. 156 y 161.

Ahora bien, en vista de que la Ley Núm. 2 no define qué personas poseen capacidad para representar al patrono a los fines de recibir el emplazamiento, es menester acudir a otras disposiciones legislativas análogas que nos sirvan de ayuda para imprimirle un significado razonable a dicho concepto. Ello lo hacemos en virtud de lo establecido en el Artículo 18 del Código Civil de Puerto Rico que dispone que "[l]as leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro." 31 L.P.R.A. sec. 18.

A tales efectos, y considerando que el patrono en el presente caso es una corporación, cabe hacer referencia al método dispuesto para emplazar a las corporaciones en las Reglas de Procedimiento Civil y en la Ley General de Corporaciones, así como a su jurisprudencia interpretativa. La Regla 4.4(e) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R.4.4, dispone que se emplazará:

> A una corporación ... entregando copia del emplazamiento y de la demanda a un <u>oficial</u>, <u>gerente administrativo</u> o <u>agente general</u>, o <u>cualquier otro agente autorizado por nombramiento o designado por ley para recibir emplazamientos</u>. (énfasis nuestro).

Por su parte, la Ley General de Corporaciones, Ley Núm. 144 de 10 de agosto de 1995, en su Artículo 12.01(a) dispone, en lo pertinente, que:

> Se emplazará a cualquier corporación organizada en el Estado Libre Asociado entregando personalmente una copia del emplazamiento a <u>cualquier oficial o director de la corporación</u> en el Estado Libre Asociado, o al <u>agente inscrito</u> de la corporación en el Estado Libre Asociado, o dejándola <u>en el domicilio o residencia habitual de cualquier oficial, director o agente inscrito</u> (si el agente inscrito es un individuo) en el Estado Libre Asociado, o en la oficina designada u otra sede de negocios de la corporación en el Estado Libre Asociado. 14 L.P.R.A. sec. 3120(a) (énfasis nuestro).
> ....

De las disposiciones anteriormente citadas se puede apreciar que, a diferencia de la Ley Núm. 2, éstas disponen específicamente quiénes representan a la corporación a los fines de diligenciar el emplazamiento.

Entre ellos se menciona que es adecuado efectuarlo a través de un oficial, director, gerente administrativo, agente general o cualquier agente designado por nombramiento o por ley para recibir el emplazamiento. En ese sentido es preciso notar que estas disposiciones no dejan la puerta abierta para permitir el emplazamiento de una corporación a través de cualquier persona. Es evidente que, para que la notificación hecha a la corporación sea válida y suficiente, se requiere que el emplazamiento se realice a través de personas que, por su posición o funciones, ostenten cierto grado de autoridad o capacidad para representar a la corporación. Esto es, el denominador común en relación con las personas designadas para recibir los emplazamientos lo es el elemento de representatividad.

Cónsono con lo anterior, hemos expresado que el debido proceso de ley exige que el método de notificación utilizado sea uno que ofrezca una probabilidad razonable de informarle al demandado sobre la acción entablada en su contra. Quiñones Román v. Compañía ABC, res. el 31 de octubre de 2000, 2000 TSPR 160; Márquez Resto v. Barreto Lima, 143 D.P.R. 137, 143-44 (1997). Específicamente se ha establecido que con relación a las personas a través de las cuales se puede emplazar a una corporación, éstas deben estar "en una posición de suficiente responsabilidad como para que sea razonable presumir que le transmitirá o remitirá a sus superiores el emplazamiento o demanda."

Quiñones Román v. Compañía ABC, ante.[7] En el caso citado anteriormente se entendió que el emplazamiento realizado a través de un gerente operacional de un Supermercado Pueblo de Yauco constituyó notificación adecuada del pleito instado contra el patrono demandado que, en ese caso, era una corporación foránea que operaba la cadena de Supermercados Pueblo a través de toda la Isla.

Por otro lado, en Hach Co. v. Pure Water Systems, Inc., 114 D.P.R. 58, 63 (1983), establecimos que para determinar si una persona es apta para recibir un emplazamiento dirigido a una corporación hay que tomar en cuenta los deberes, funciones y la autoridad de dicha persona.[8] Resolvimos en dicho caso que el emplazamiento efectuado a través de una secretaria de la oficina, quien no conocía la dirección ni el teléfono de los oficiales y directores de la compañía, es uno insuficiente. En Pou v. American Motors Corporation, 127 D.P.R. 810, 824 (1991), entre otras cosas, expresamos que como el que había recibido el emplazamiento no era empleado, funcionario ni oficial de las compañías demandadas no podía ser

---

[7] Véase Wright & Miller, Federal Practice and Procedure, Civil 3d. sec. 1103, pág. 573 (2002). A tono con lo anterior estos tratadistas también comentan que "[i]n the case of service on a corporation, delivery to an officer or agent whose position in the organization indicates that there is a high probability that papers will reach those persons in the organization responsible for protecting the firm's interests in the litigation is sufficient." Wright & Miller, Federal Practice and Procedure, ante, sec. 1074, págs. 362-63.

[8] Véase, además: Ríos v. Niagara Mach. and Tools Works, 86 F.R.D. 383, 386 (1980).

considerado como agente, gerente administrativo o agente general para propósitos de recibir emplazamientos sin que se hubiese demostrado que ostentaba tal autoridad.

No es necesario que la autoridad de la persona se extienda sobre la totalidad del negocio del patrono; sino que lo verdaderamente decisivo es la naturaleza de la relación entre las partes. Véase: United Fireworks v. Tribunal Superior, 96 D.P.R. 362, 369 (1968). Ello, a su vez, se determinará mediante un análisis de los hechos, examinando la autoridad que esa persona tenga dentro de la organización. Ibid. a la pág. 370.

En resumen, tenemos que cuando la parte demandada en un caso ordinario sea una corporación, el emplazamiento de ésta no podrá efectuarse a través de cualquier persona.[9] Aquél que reciba el emplazamiento deberá tener cierto grado de capacidad para representar a la corporación. A tales efectos, los tratadistas Charles Wright y Arthur Miller, citando con aprobación jurisprudencia norteamericana, han expresado:

> The rational of all rules for service of process on corporations is that service must be made on a representative so integrated with the corporation served as to make it a priori supposable that he

---

[9] "Thus, service of process in a corporate employee who lacks authority to accept service on behalf of the corporation renders service invalid.
. . . .
In assessing whether a particular person is an agent authorized to accept service for a corporation, a court will consider the level of authority granted to that individual within the corporation." 1 Moore's Federal Practice, ante, sec. 4.53[2][c].

> will realize his responsibility and know what he should do with any legal papers served on him.[10]

Ciertamente, aunque la anterior normativa --aplicable a casos de demandas ordinarias radicadas contra corporaciones-- es una que no es enteramente aplicable a los casos radicados al amparo de la Ley Núm. 2, la misma resulta pertinente e ilustrativa y nos permite imprimirle a la antes transcrita Sección 3 de la Ley Núm. 2 un significado razonable. Ello a tono con las exigencias del debido proceso de ley para los casos en que el patrono querellado sea una corporación. De hecho, si examinamos nuestra jurisprudencia interpretativa de la Ley Núm. 2, observamos una tendencia a utilizar estándares similares a los aplicables al amparo de las Reglas de Procedimiento Civil y la Ley General de Corporaciones para determinar si el emplazamiento a una corporación querellada es o no válido.

En Silva Recio v. Mayagüez Outboard Motor Club, 105 D.P.R. 279 (1976) se llevó a cabo el emplazamiento a través de un ex presidente del club. El patrono querellado impugnó la jurisdicción del tribunal aduciendo que dicha persona no podía recibir emplazamientos a nombre suyo. El tribunal de instancia dejó sin efecto la sentencia dictada en su contra al entender que el emplazamiento fue defectuoso. Expidió un nuevo emplazamiento que le fue

---

[10] Wright & Miller, Federal Practice and Procedure, Civil 3d. sec. 1101, pág. 563 (2002).

entregado al contable de la entidad. El patrono impugnó este nuevo emplazamiento y el foro de instancia volvió a expedir otro emplazamiento el cual fue entregado al presidente del club. En lo pertinente, este Tribunal resolvió, que al amparo de la Sección 3 de la Ley Núm. 2 el querellado fue emplazado debidamente por lo menos cuando se le notificó la demanda y la citación al contable y luego a su presidente. *Ibid*. a la pág. 284.[11] En León García v. Restaurante El Tropical, res. el 7 de junio de 2001, 2001 TSPR 81, resolvimos que un tribunal adquiere jurisdicción sobre un patrono querellado, al amparo de las disposiciones de Ley. Núm. 2, cuando el emplazamiento se diligencia a través de la administradora del lugar donde trabaja el empleado. Debe enfatizarse el hecho de que la administradora era también directora y oficial de la corporación.

Resulta evidente que, a pesar del carácter expedito y reparador de la Ley Núm. 2 y de la amplitud del mecanismo de emplazamiento allí dispuesto, la normativa correcta a utilizar en esta clase de casos es una a los efectos de que dicho emplazamiento se efectúe a través de una persona que tenga, al menos, cierto grado de autoridad para recibir el emplazamiento en representación del patrono.

---

[11] Véase además, Ruiz Rivas v. Col. San Agustín, ante, en el que se emplazó a la querellada a través de la directora del colegio; y Marín Kuilan v. Teddy Díaz Fastening Systems, Inc., 142 D.P.R. 499 (1997), en el cual se diligenció el emplazamiento a través del gerente de contabilidad de la compañía querellada.

De todo lo anterior se desprende que la contención de la recurrida, avalada por el foro intermedio apelativo, a los efectos de que el emplazamiento al amparo de la Ley Núm. 2 es suficiente si se diligencia en cualquier persona después que se haga en el lugar de trabajo del patrono, es una errónea. Su posición es producto de una equivocada interpretación del caso de León García v. Restaurante El Tropical, ante. En el referido caso, calificamos como válido el emplazamiento realizado a la compañía, no sólo porque se diligenció en el lugar de trabajo del patrono, sino, además, porque se hizo a través de la administradora; persona que claramente "representaba" al patrono en dicho lugar. Esto es, se cumplieron los dos elementos de lugar y de persona apta para recibir el emplazamiento, que, repetimos, contempla la Sección 3 de la Ley Núm. 2 para el emplazamiento del patrono querellado cuando éste no puede ser emplazado personalmente.[12]

Interpretar, de forma contraria, la Sección 3 de la Ley. Núm. 2 ––esto es, a los efectos de que el emplazamiento al patrono pueda ser diligenciado a través de cualquier persona–– sería imprimirle a éste un significado muy amplio en clara contravención con los postulados del debido proceso de ley.

---

[12] Cabe señalar que en el referido caso la validez del emplazamiento no sólo fue evaluada a la luz de la Ley Núm. 2, sino que también la examinamos a tenor con los principios del debido proceso de ley y las Reglas de Procedimiento Civil.

Reiteramos en el día de hoy el carácter reparador y expedito del procedimiento establecido bajo la Ley. Núm. 2, así como también el enfoque proteccionista en beneficio del obrero que ésta persigue, pero esa postura no puede tener el efecto de privar a la otra parte de un debido proceso de ley. Esto es, a la parte querellada al menos debe dársele la oportunidad de ser notificada adecuadamente del pleito en su contra de tal manera que exista una probabilidad razonable de que éste será informado de la existencia del mismo para que así pueda defenderse de la querella. Siendo este procedimiento uno sumario, de términos cortos y de consecuencias adversas inmediatas para el patrono, la notificación adecuada de la reclamación en su contra es un derecho básico que se le debe asegurar a éste.

Si bien en Silva Recio v. Mayagüez Outboard Motor Club, ante, a la pág. 284, refiriéndonos al mecanismo de emplazamiento de la Ley Núm. 2, expresamos que "no podemos permitir que el juego de los tecnicismos le niegue [al obrero] su día en corte", es importante aclarar que el derecho a un debido proceso de ley no es un tecnicismo legal que puede ser soslayado, sino una garantía constitucional que debemos salvaguardar. En virtud de lo antes expuesto, resolvemos que la terminología de la Ley Núm. 2, a los efectos de que "se diligenciará la orden en la persona que en cualquier forma represente a dicho querellado", establece un requisito mínimo de

representatividad para que el emplazamiento del patrono sea válido.

Ahora bien, considerando que el emplazamiento dispuesto en esta Ley fue uno especial en sintonía con el propósito reparador y sumario que inspiró la misma, no podemos limitar el grupo de personas aptas para recibir el emplazamiento a aquellas únicamente señaladas en las Reglas de Procedimiento Civil o en la Ley General de Corporaciones. Por tanto, bajo la Ley Núm. 2, el emplazamiento al patrono querellado que no pueda ser emplazado personalmente, no sólo se podrá efectuar a través de un director, oficial, administrador, gerente administrativo, agente general, agente inscrito o designado por ley o nombramiento, sino también, a través de cualquier persona que por su puesto, funciones, deberes, autoridad o relación con el patrono ostente capacidad para representarlo en la fábrica, taller, establecimiento, finca, sitio en que se realizó el trabajo que dio origen a la reclamación, oficina o residencia; determinación que se deberá hacer caso a caso.

De este modo, establecemos una norma flexible en cuanto a las personas aptas para recibir el emplazamiento pero sin llegar al extremo de permitir que se efectúe a través de cualquier persona, lo cual atentaría contra el

debido proceso de ley y con el propio texto de la Ley que exige un requisito mínimo de representatividad.[13]

IV.

Lo antes expresado no resuelve, totalmente la controversia planteada en el caso. Un examen de los autos refleja que, en efecto, existe una controversia de hechos en torno a la corrección del emplazamiento efectuado. Esto es, la información que surge de los documentos que obran en el expediente es insuficiente para poder evaluar si el emplazamiento llevado a cabo en el presente caso fue diligenciado en una persona apta para representar al patrono en el lugar de trabajo. Lo único que tenemos es la declaración jurada de la señora Sara De la Vega Ramos que se acompañó a la moción solicitando anulación del emplazamiento, presentada por el patrono querellado, de donde surge que, *alegadamente*, la persona emplazada no era miembro de la Junta de Directores del periódico, oficial, agente ni persona autorizada para recibir el

---

[13] Coincidimos con la preocupación expuesta por la parte peticionaria cuando plantea que el permitir que se emplace a una corporación querellada a través de cualquier persona, obviando el requisito de representatividad, "expone a esas entidades a estar a merced de que cualquier persona, con interés o sin interés, con responsabilidad o sin responsabilidad[,] con lealtad o sin lealtad, con o sin facultad para obligar a la corporación, pueda exponer por no dar curso oportuno a notificaciones judiciales a severas sanciones civiles o hasta criminales." Véase Alegato de Solicitud de Certiorari, a la pág. 9.

emplazamiento. En la misma, además, se alega que dicha persona era un mero empleado asalariado del patrono.

Es preciso recordar que el ejercicio de defensas válidas por parte de un querellado en una acción bajo el procedimiento sumario de la Ley Núm. 2 es una circunstancia que los tribunales de instancia deben tomar en consideración antes de llegar a determinaciones, que por su naturaleza, conllevan consecuencias funestas para esa parte. Román Cruz v. Díaz Rifas, ante, a la pág. 506. No se puede despachar livianamente un planteamiento dirigido a la falta de jurisdicción del tribunal sobre la persona del querellado bajo un procedimiento de esta naturaleza. "Como regla general una buena defensa debe siempre inclinar la balanza a favor de una vista en los méritos,..." Ibid. a la pág. 507. Es menester recalcar que los tribunales no somos meros autómatas y que el proceso de formar conciencia judicial exige la comprobación de cualquier aseveración mediante prueba. A tales efectos, hemos reiterado que el tribunal deberá celebrar las vistas que crea necesarias y adecuadas. Ruiz Rivas v. Col. San Agustín, ante; Continental Ins. Co. v. Isleta Marina, 106 D.P.R. 809, 817 (1978).

En el presente caso hay controversia en torno a la corrección del emplazamiento efectuado. Existe una necesidad real de determinar si el señor Roberto Ortiz Mariano, en quien se diligenció el mismo, poseía o no capacidad para representar al patrono en el lugar de

trabajo. Sólo así podrá concluirse si la notificación del pleito a través de éste fue adecuada. La comparecencia especial que hizo el patrono querellado ante el tribunal de instancia, sin someterse a su jurisdicción, alegando falta de jurisdicción sobre su persona bajo el procedimiento sumario de la Ley Núm. 2, amerita la celebración de una vista, luego de la cual el tribunal de instancia deberá decidir si el emplazamiento es, o no, uno válido en derecho.

V.

Por los fundamentos antes expuestos, procede revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones. Devolvemos el caso al Tribunal de Primera Instancia, el cual deberá celebrar una vista evidenciaria en la cual se dilucidará la corrección y validez del emplazamiento realizado en el presente caso. Esto es, debe determinarse, si de acuerdo a lo aquí establecido, la persona que recibió el emplazamiento tenía, o no, facultad para representar al patrono querellado. En armonía con el procedimiento sumario contemplado en la citada Ley Núm. 2 ordenamos que la referida vista sea señalada para la fecha más próxima posible. [14]

---

[14] En vista de que es preciso determinar si el tribunal adquirió jurisdicción sobre la persona del patrono querellado mediante el emplazamiento efectuado, nos abstenemos de resolver los últimos dos errores señalados por la peticionaria en esta etapa de los procedimientos.

Se dictará Sentencia de conformidad.


                              FRANCISCO REBOLLO LÓPEZ
                                  Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ivonne Lucero Cuevas

    Querellante-recurrida

      vs.               CC-2001-811        CERTIORARI

The San Juan Star Company

    Querellada-peticionaria


SENTENCIA

San Juan, Puerto Rico, a 16 de mayo de 2003


     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones; devolviéndose el caso al Tribunal de Primera Instancia, el cual deberá celebrar una vista evidenciaria en la cual se dilucidará la corrección y validez del emplazamiento realizado en el presente caso. Esto es, debe determinarse, si de acuerdo a lo aquí establecido, la persona que recibió el emplazamiento tenía, o no, facultad para representar al patrono querellado. En armonía con el procedimiento sumario contemplado en la citada Ley Núm. 2 ordenamos que la referida vista sea señalada para la fecha más próxima posible.

     Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre con el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. La Juez Asociada señora Naveira de Rodón no intervino.


                        Patricia Otón Olivieri
                  Secretaria del Tribunal Supremo