Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| DANIEL M. LÓPEZ ACEVEDO<br><br>Apelada<br><br>v.<br><br>HUANG X CHANG CORP. H/N/C RICA CHINA RESTAURANT Y OTROS<br><br>Apelante | KLAN202500380 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Toa Alta<br><br>Caso Núm.: TA2024CV01129<br><br>Sobre: Ley 80 Despido Injustificado; Ley 180 sobre salarios; Procedimiento Sumario Ley Núm. 2 del 17 de oct. de 1961; Ley 402 de 12 de mayo de 1950 |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 13 de junio de 2025.

Comparece HUANG X CHANG CORP. H/N/C RICA CHINA RESTAURANT (en adelante, RICA CHINA y/o parte apelante) mediante un recurso de *Apelación,* para solicitarnos la revisión de la *Sentencia Sumaria* emitida el 23 de abril de 2025, y notificada el día 24, del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Toa Alta.[1] En la misma fecha en que se notificó la antedicha *Sentencia Sumaria,* el señor Daniel M. López Acevedo (señor López Acevedo y/o apelado) instó un escrito intitulado *Enmienda a Sentencia Sumaria.*[2] Producto de este escrito, y en esa misma fecha, el foro de instancia emitió una *Sentencia Sumaria Enmendada,* la cual se notificó el 25 de abril de 2025.[3]

---

[1] Apéndice del recurso, a las págs. 263-270.
[2] *Íd.,* a las págs. 271-272.
[3] *Íd.,* a las págs. 273-280.

Número Identificador

SEN2025_____

Mediante la *Sentencia Sumaria* original, el tribunal *a quo* declaró *Con Lugar* la querella y ordenó a RICA CHINA a pagar la suma de $22,402.80 dólares, por concepto de mesada, más $8,625.00 dólares por concepto de honorarios de abogado a favor del apelado. Por su parte, en la *Sentencia Sumaria Enmendada* el foro de instancia sostuvo su dictamen mediante el cual declaró *Con Lugar* la querella, pero en el dictamen modificó la suma impuesta por concepto de mesada para elevarla a $34,500.00 y mantuvo inalterada la suma impuesta por concepto de honorarios de abogado.

Por los fundamentos que expondremos, se *confirma* en parte y se *revoca* en parte el dictamen apelado.

El presente caso inició cuando, el 3 de octubre de 2024, el señor López Acevedo instó una *Querella* contra el restaurante RICA CHINA, al amparo de la Ley Sobre Despido Injustificado (Ley Núm. 80),[4] la Ley Contra el Despido Injustificado o Represalias (Ley Núm. 115),[5] y a tenor con el procedimiento sumario establecido en la Ley de Procedimiento Sumario de Reclamaciones Laborales[6] (Ley Núm. 2).[7] En el escrito, alegó que trabajaba a tiempo completo para RICA CHINA donde realizaba diversas funciones tales como supervisar a otros empleados, servicio al cliente y otras funciones relacionadas a la operación del restaurante. Esbozó que, durante su empleo, nunca fue amonestado, empero, fue despedido mediante carta y la razón que le fue provista fue porque el restaurante cerró la operación de entrega de comidas. Expuso que previo a su despido ocurrieron unos eventos relacionados a un aire acondicionado del restaurante y que, producto de ciertas situaciones, le expresó al dueño del restaurante, el señor Chang, que este no haría más trabajos con el

---

[4] Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a *et seq.*
[5] Ley Núm. 115 de 20 de diciembre de 1991, 29 LPRA sec. 194 *et seq.*
[6] Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.*
[7] Apéndice del recurso, a las págs. 1-7.

aire, que llamara al técnico. Detalló que, igualmente, hubo otros intercambios verbales con el señor Chang, por unos eventos suscitados con la pareja de este en el lugar de trabajo. Dicho lo anterior, acotó que, posterior a estos eventos, y en una fecha en que no tenía turno de trabajo, fue al restaurante a recoger su cheque semanal y allí el señor Chang se reunió con el señor López Acevedo. Esbozó que, en dicha reunión, el señor Chang le informó que el restaurante no realizaría más entregas de comida por lo que tenía que cesantear a varios empleados, incluyendo a su pareja. Además, le informó al señor López Acevedo que, el 18 de agosto de 2024, sería su último día de trabajo. Reseñó, además, que el 19 de agosto de 2024, el señor López Acevedo fue al restaurante y el señor Chang le entregó tres (3) documentos: (i) una carta que indicaba el cese de operaciones del área de entregas; (ii) una hoja con un manuscrito, la cual contenía ciertos cómputos matemáticos relacionados a la liquidación de vacaciones y bono de navidad, en cuanto a la pareja del señor Chang y al señor López Acevedo, y (iii) un cheque correspondiente a la liquidación del señor López Acevedo.

Al amparo de lo anterior, en su *Querella*, el señor López Acevedo alegó haber sido despedido injustificadamente, y por represalias. A tenor, solicitó el pago de la mesada, que se determinara de que el despido fue como una medida de represalia y el pago de costas y honorarios de abogado. De igual forma, solicitó el pago de costas, gastos y honorarios de abogado a tenor con la Ley Núm. 115.[8]

En reacción, el 21 de octubre de 2025, RICA CHINA presentó una *Contestación a Querella,* en la cual acompañó una solicitud de desestimación de la causa de acción sobre represalia.[9] En relación

---

[8] 29 LPRA sec. 194 *et seq.*
[9] Apéndice del recurso, a las págs. 8-16. Véase el Sistema Unificado de Manejo y Administración de Casos (SUMAC), a la Entrada 4.

con la contestación a la querella, aceptó algunas alegaciones, negó otras. Además, presentó ciertas defensas afirmativas. Por otro lado, en cuanto a la solicitud de desestimación, en torno a las alegaciones sobre represalias, esgrimió que aun dando por ciertas las alegaciones fácticas de la querella, en cuanto a la causa de acción al amparo de la Ley Núm. 115,[10] de los hechos alegados no se justificaba la concesión de un remedio. Dado a todo lo anterior, solicitó que se declarara sin lugar la querella, desestimara la causa de acción al amparo de la Ley Núm. 115,[11] y se impusieran honorarios por temeridad.

De ahí, el 9 de diciembre de 2024, el apelado presentó una solicitud para enmendar la querella.[12] El propósito de la referida enmienda era para eliminar las alegaciones al amparo de la Ley Núm. 115,[13] y modificar la sexta alegación de la *Querella.*

Luego, el 10 de diciembre de 2024, el apelado instó una oposición a la solicitud de desestimación instada por RICA CHINA.[14] En el pliego, se opuso a que su causa de acción relacionada a la Ley Núm. 115,[15] fuese desestimada al amparo de la Regla 10.2 de Procedimiento Civil.[16] Solicitó que se le proveyera oportunidad para presentar prueba relacionada a esta causa de acción. Arguyó que la solicitud de desestimación se había presentado en una etapa temprana sin haber concluido el descubrimiento de prueba.

Así las cosas, el 13 de diciembre de 2024, el apelado presentó una *Querella Enmendada.*[17] En términos generales, el contenido de las alegaciones fue el mismo, salvo porque se eliminó la causa de acción al amparo de la Ley Núm.115,[18] y se modificó la sexta

---

[10] 29 LPRA sec. 194 *et seq.*
[11] *Íd.*
[12] Apéndice del recurso, a las págs. 17-18.
[13] 29 LPRA sec. 194 *et seq.*
[14] Apéndice del recurso, a las págs. 19-26.
[15] 29 LPRA sec. 194 *et seq.*
[16] 32 LPRA Ap. V, R. 10.2.
[17] Apéndice del recurso, a las págs. 27-32.
[18] 29 LPRA sec. 194 *et seq.*

alegación, para indicar que él trabajó en RICA CHINA desde junio de 2008 hasta el día de su despido, el 19 de agosto de 2024.

En reacción, el 16 de diciembre de 2024, RICA CHINA, presentó su *Contestación a querella enmendada.*[19] En lo atinente a la sexta alegación, negó lo alegado por el señor López Acevedo y alegó que este trabajó desde junio de 2017, hasta el 19 de agosto de 2024. Además, negó que el señor López Acevedo hubiese sido despedido. En cuanto al resto de las respuestas, fueron esencialmente iguales a las de la contestación a la querella original.

En lo relativo a la solicitud de desestimación instada por RICA CHINA, mediante *Resolución* emitida el 10 de diciembre de 2024, notificada el día 17, del mismo mes y año, el tribunal de instancia declaró *No Ha Lugar* la misma, en esa etapa de los procedimientos.[20]

De lo que sigue, el 6 de marzo de 2025, el apelado presentó una *Moción de sentencia sumaria.*[21] En su escrito, esbozó que en el caso de autos no existía controversia alguna de hechos que impidiera dictar una sentencia sumaria, sino que lo que estaba pendiente era aplicar los hechos al derecho para determinar si su despido fue uno injustificado. En su pliego, presentó dieciocho (18) propuestas de hechos incontrovertidos.[22] Como parte de su argumentación, expresó que en el presente caso era claro que el despido fue uno arbitrario y caprichoso en contravención a la Ley

---

[19] Apéndice del recurso, a las págs. 32a-32e.
[20] *Íd.*, a las págs. 33-34.
[21] *Íd.*, a las págs.35-69. Para sustentar su petitorio sumario anejó los siguientes documentos: (i) Exhibit 1: Certificación de empleo del señor López Acevedo, suscrita por el señor Chang; (ii) Exhibit 2: Misiva intitulada "Memorando", dirigida al señor López Acevedo y suscrita por el señor Chang; (iii) Exhibit 3: Documento a manuscrito con computo de las compensaciones por bono, vacaciones y enfermedad del señor Lopez Acevedo y Yanilka Montañez Torres (en adelante, señora Montañez Torres); (iv) Exhibit 4: Cheque por la cantidad de $1,336.00 dólares dirigido al señor López Acevedo, suscrito por el señor Chang, y cheque por la cantidad de $978.00 dirigido a la señora Montañez Torres, suscrito igualmente por el señor Chang. Por otra parte, el apelado anejó a su moción de sentencia sumaria una Deposición del señor Chang, tomada el 4 de diciembre de 2024, a las 12:04 p.m. Puntualizamos que la señora Montañez Torres fue también cesanteada de RICA CHINA, no obstante, esta presentó una demanda independiente a la acción del título, en el alfanumérico TA2024CV01130.
[22] Apéndice del recurso, las págs. 36-38.

Núm. 80.[23] Aseguró que él cumplió con todas las normas de su trabajo y que nunca se le dio una amonestación escrita. En torno al alegado cierre de las operaciones de entrega de comidas, acotó que RICA CHINA había admitido que en los últimos cinco (5) años no había tenido una merma de ingresos. Argumentó que, con el cierre de operaciones de entrega de comidas, no se hizo una reestructuración de posiciones ni se le ofreció una alternativa a este, quien estaba acostumbrado a realizar otros trabajos en el restaurante cuando era necesario. Al amparo de lo expuesto, solicitó que se dictara sentencia sumaria a su favor.

En respuesta, mediante *Orden* emitida el 7 de marzo de 2025, notificada el 10 de marzo de 2025, el foro de instancia concedió término a RICA CHINA para exponer su posición.[24]

Así las cosas, el 31 de marzo de 2025, el apelante presentó su *Contestación a la moción de sentencia sumaria y solicitud de sentencia sumaria*.[25] Con relación a la contestación a la moción dispositiva instada por el señor López Acevedo, esbozó que se encontraba en controversia si este había sido o no despedido de forma injustificada. Alegó que ciertos hechos propuestos como incontrovertidos por el señor López Acevedo se encontraban en controversia y otros no. Por otro lado, en cuanto a su solicitud de sentencia sumaria, RICA CHINA solicitó la desestimación sumaria de la querella. En apoyo a lo anterior, y según señalamos, presentó su solicitud de sentencia sumaria en la cual, adoptó por referencia lo argumentado en la contestación a sentencia sumaria, expresó ciertos hechos que de buena fe entendía estaban controvertidos y

---

[23] 29 LPRA sec. 185a *et seq*.

[24] Apéndice del recurso, a la pág. 70.

[25] *Íd.*, a las págs. 71-262. Véase el SUMAC, a la Entrada 30. En su escrito de oposición y en solicitud de sentencia sumaria a su favor, la parte apelante acompañó los siguientes documentos: (i) Anejo 1: Deposición del señor. Chang, tomada el 4 de diciembre de 2024, a las 12:00 p.m.; (ii) Anejo 2: Deposición del señor Chang, tomada el 4 de diciembre de 2024, a las 11:11 a.m.; (iii) Deposición del señor López Acevedo, con fecha del 4 de diciembre de 2024, y (iv) Deposición de la señora Montañez Torres, con fecha del 4 de diciembre de 2024.

argumentó las razones por las cuales debía dictarse sentencia sumaria.

De lo que sigue, el 23 de abril de 2025,[26] el foro primario emitió *Sentencia Sumaria.* La misma fue notificada el 24 de abril de 2025.[27] Mediante el antedicho dictamen, el foro de instancia declaró *Con Lugar* la querella instada y, en consecuencia, ordenó a RICA CHINA a pagarle al apelado la cantidad de $22,402.80 dólares por concepto de mesada y el 25% por concepto de honorarios de abogado, con la indicación de que la suma era de $8,625.00 dólares.[28]

Como parte del dictamen emitido, el foro de instancia emitió las siguientes diecisiete (17) determinaciones de hechos:

1. El querellado es el Sr. Huang Chang, propietario de Rica China Restaurant.

2. El querellante fue empleado de Rica China Restaurant.

3. El querellante trabaj[ó] en Rica China Restaurant por 15 años.

4. El querellante devengaba un sueldo por hora de $12.00.

5. El querellante devengaba un sueldo semanal de $500.00.

6. En cuanto al número de horas, este trabajaba 5 días a la semana.

7. Rica Chica Restaurant no tenía un récord escrito de asistencia incluyendo las entradas y salidas de sus empleados.

8. Rica Chica Restaurant no cuenta con un manual de empleados.

9. Rica China Restaurant contaba con un servicio de "delivery".

---

[26] Apéndice del recurso, a las págs. 263-270.
[27] *Íd.*, a la pág. 270.
[28] *Íd.*, a la pág. 269. Se desprende de la *Sentencia Sumaria* que el foro de instancia incluyó el cómputo matemático para arribar a la suma de $22,402.80, según surge del dictamen e indicó lo siguiente:

Cálculo de mesada basado en 15 años de antigüedad.

Fórmula utilizada:

(a) sueldo semanal $500.00 x 4 = $2,000.00 mensual x 6 meses = $12,000.00
(b) sueldo de 3 semanas $1,500.00 x 15 años = $22,500.00

(a) + (b) = **$34,500.00**

10. El querellante ocupaba la posición de empleado de entregas de comida a domicilio.

11. El querellante hac[í]a entregas de comida para Rica China Restaurant.

12. Cuando alguien faltaba a su turno en la cocina de Rica China Restaurant, el querellante trabajaba en la cocina.

13. Sobre los ingresos de Rica China Restaurant, el restaurant no ha sufrido una disminución significativa en los últimos cinco (5) años.

14. El 19 de agosto del 2024, el querellado le entregó un documento dirigido al querellante denominado «memorando" el cual indica lo siguiente:

> "Debido a la baja demanda en nuestro servicio de entrega a domicilio, nos vemos en la difícil po[si]ción de tener que descontinuar este método de ventas. Agradecemos el esfuerzo y dedicación de ustedes que han trabajado en esa área. Sin embargo, lamentablemente, esto significa que ya no requeriremos personal para este servicio. Entendemos que este cambio puede ser desafiante, y estamos comprometidos a apoyar a los empleados afectados durante esta transición. Agradecemos su compresión y colaboración durante este proceso."

15. El 19 de agosto del 2024, el querellado le entregó un documento escrito a mano al querellante en el que cuadraba sus días de vacaciones, enfermedad y bono de navidad por la cantidad total de $1,336.00.

16. El 19 de agosto del 2024, el querellado le entreg[ó] un cheque al querellante por la cantidad de $1,336.00.

17. Luego de que el querellante ces[ó] su trabajo en Rica China Restaurant a este nunca l[e] llamaron para ofrecerle trabajo.[29]

En su dictamen, el tribunal de instancia concluyó que, en el presente caso, no existía controversia sustancial de hechos esenciales y pertinentes que impidiera emitir un dictamen sumario a favor del señor López Acevedo. En relación con la moción dispositiva instada por RICA CHINA, concluyó que no demostró que el despido hubiese sido justificado a tenor con la legislación aplicable. Expresó que no se demostró con prueba alguna en la solicitud de sentencia sumaria las alegaciones relacionadas a la

---

[29] Apéndice del recurso, a la pág. 264.

reestructuración de la empresa ni esfuerzos para relocalizar al señor López Acevedo a otra posición basado en sus habilidades y antigüedad, para justificar el despido.

En la misma fecha, en la cual se notificó la *Sentencia Sumaria*, el apelado presentó un documento intitulado *Enmienda a sentencia sumaria*.[30] Expuso, en síntesis, lo siguiente: (i) que el 22 de abril de 2025, el representante legal del compareciente había sometido un proyecto de sentencia al Tribunal en torno al caso de autos; (ii) que en dicho proyecto, se incluyó un cálculo incorrecto en cuanto a la mesada; y (iii) que la mesada debió ser de 34,500.00 dólares y no de $22,402.80 dólares, para lo cual acompañó una fórmula matemática. A tenor, solicitó al foro primario que tomara conocimiento y enmendara la sentencia.

En respuesta, y en la misma fecha en que se presentó el petitorio del apelado, el foro de instancia emitió una *Sentencia Sumaria Enmendada*,[31] la cual se notificó el 25 de abril de 2025.[32] En el dictamen enmendado, en la parte dispositiva, el foro *a quo* modificó la cuantía impuesta por concepto de mesada, para un total de $34,500.00 dólares.[33] El resto de su dictamen permaneció inalterado.

Inconforme, el 5 de mayo de 2025, el apelante instó un recurso de apelación en el cual esgrimió la comisión de los siguientes cinco (5) errores:

> **1 – Erró manifiestamente el HTPI al determinar que el Apelado fue despedido sin justa causa sin siquiera**

---

[30] Apéndice del recurso, a las págs. 271-272.

[31] *Íd.*, a las págs. 273-279.

[32] *Íd.*, a la pág. 280.

[33] *Íd.*, a la pág. 279. Se desprende de la *Sentencia Sumaria Enmendada* que el foro de instancia incluyó el cómputo matemático para arribar a la suma de $34,500.00 e indicó lo siguiente:

Cálculo de mesada basado en 15 años de antigüedad.

Fórmula utilizada:

(c)  sueldo semanal $500.00 x 4 = $2,000.00 mensual x 6 meses = $12,000.00
(d)  sueldo de 3 semanas $1,500.00 x 15 años = $22,500.00
(a)  + (b) = **$34,500.00**

**considerar la prueba que presentó la Apelante [en] su solicitud de sentencia sumaria.**

**2 – Erró manifiestamente el HTPI al no considerar admitidas relaciones de hechos para las cuales se indicaron los párrafos y las páginas de las transcripciones de las deposiciones tomadas a las partes que las establecen, y que no fueron debidamente controvertidas por el Apelado en su OPOCISIÓN(sic) A SOLICITUD DE MOCIÓN DE SENTENCIA SUMARIA.**

**2 – Erró manifiestamente el HTPI en sus determinaciones de hechos.**

**3 – Erró manifiestamente el HTPI al concluir que la Apelante tenía que reponer en su puesto al Apelado[,] aun cuando es un hecho no controvertido que las funciones de la clasificación ocupacional del Apelado cesaron permanentemente.**

**4 – Erró el HTPI al imponer la cuantía de compensación por mesada.**

Por su parte, el 4 de junio de 2025, compareció la apelada mediante *Oposición a apelación.* Habiendo quedado el recurso perfeccionado, procederemos a disponer del mismo.

II

**A. La Apelación en los Casos Presentados al Amparo del Procedimiento Sumario de la Ley Núm. 2**

La Ley Núm. 2 provee un mecanismo procesal sumario para la rápida tramitación y adjudicación de las querellas de obreros y empleados presentadas contra sus patronos por servicios prestados, relacionadas a salarios, beneficios y derechos laborales.[34] El carácter sumario constituye la médula de la Ley Núm. 2.[35] Es por ello, que, para cumplir con su propósito rector, de proveer al obrero o empleado un remedio rápido y eficaz,[36] la Sección 9 de la Ley Núm. 2 dispone que "[c]ualquiera de las partes que se considere perjudicada por la sentencia emitida por el Tribunal de Primera Instancia podrá interponer recurso de apelación ante el Tribunal de Apelaciones, en el término jurisdiccional de diez (10) días,

---

[34] 32 LPRA sec. 311 *et seq. Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 254, 265 (2018); *Patino Chirino v. Parador Villa Antonio,* 196 DPR 439, 446 (2016); *Vizcarrondo Morales v. MVM, Inc.,* 174 DPR 921, 928 (2008); *Lucero v. San Juan Star,* 159 DPR 494, 504 (2003).
[35] *Bacardí Corp. v. Torres Aguayo,* 202 DPR 1014, 1019 (2019).
[36] *Patiño Chirino v. Parador Villa Antonio,* 196 DPR 439, 446-447 (2016).

computados a partir de la notificación de la sentencia del Tribunal de Primera Instancia.[37] A esos efectos, nuestro Tribunal Supremo estableció que la revisión de resoluciones interlocutorias desvirtúa el carácter sumario del procedimiento.[38] Por consiguiente, la parte que pretenda impugnar una resolución interlocutoria deberá esperar hasta la sentencia final e instar contra ella el recurso pertinente, a base del alegado error cometido.[39]

### B. Sentencia Sumaria

El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que, únicamente, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[40] El propósito de este mecanismo procesal es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[41] A esos efectos, "solamente debe ser dictada una sentencia sumaria en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[42] Es decir, para que proceda dictar sentencia por la vía sumaria, es imprescindible que, de los documentos que acompañan la solicitud o que obran en el expediente del tribunal, no surja controversia legítima sobre hechos materiales del caso y que, por ende, sólo reste aplicar el derecho.[43] Ahora bien, a los fines de considerar la moción, para que se dicte sentencia sumariamente, se tendrán como ciertos todos los hechos no controvertidos que consten en los documentos y declaraciones

---

[37] Ley Núm. 2, *supra*, Sec. 9, 32 LPRA sec. 3127.

[38] *Dávila Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 496 (1999).

[39] *Íd.*, a la pág. 497.

[40] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).

[41] *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).

[42] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a las págs. 911-912, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986) (Cita depurada); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).

[43] *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007).

juradas ofrecidas por la parte promovente.[44] No obstante, tales documentos deben evaluarse de la forma más favorable para la parte que se opone a la moción.[45]

La Regla 36 de Procedimiento Civil regula todo lo concerniente a las solicitudes de sentencia sumaria. En específico, la Regla 36.2 de Procedimiento Civil dispone que:

> Una parte contra la cual se haya formulado una reclamación podrá, a partir de la fecha en que fue emplazada pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.[46]

Por otra parte, a Regla 36.3 de Procedimiento Civil requiere que la parte que promueve la solicitud de sentencia sumaria cumpla con los requisitos de forma siguientes:

> (1) una exposición breve de las alegaciones de las partes;
>
> (2) los asuntos litigiosos o en controversia;
>
> (3) la causa de acción sobre la cual se solicita la sentencia sumaria;
>
> (4) una relación concisa, organizada y con párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, indicando los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
>
> (5) las razones por las cuales se debe dictar sentencia argumentando el derecho aplicable, y
>
> (6) el remedio que debe ser concedido.[47]

De otra parte, en cuanto a la contestación a la Sentencia Sumaria, la Regla 36.3 (b) de Procedimiento Civil dispone que esta deberá ser presentada dentro del término de veinte (20) días, desde su notificación, y deberá contener lo siguiente:

---

[44] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945, 957 (1993).
[45] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra, a la pág. 957.
[46] 32 LPRA Ap. V, R. 36.2.
[47] *Íd.*, R. 36.3.

(1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;

(2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.[48]

Cumplidos los requisitos establecidos para la solicitud de sentencia sumaria y su correspondiente oposición, el inciso (e) de la Regla 36.3 de Procedimiento Civil establece que:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[49]

No obstante, lo anterior, el solo hecho de no presentar evidencia que controvierta lo presentado por la parte promovente no implica necesariamente que proceda la sentencia sumaria.[50] Sobre este particular, el Tribunal Supremo ha resuelto que las partes no pueden descansar en aseveraciones generales, es decir, meras afirmaciones no bastan.[51] A esos efectos, y a tenor con la Regla 36.5

---

[48] 32 LPRA Ap. V, R. 36.3 (b).

[49] *Íd.*, R. 36.3 (e); *García Rivera et al. v. Enríquez,* supra, a la pág. 338; *Roldán Flores v. M. Cuebas,* 199 DPR 664, 676 (2018); *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 225 (2015).

[50] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* supra, a la pág. 913; *García Rivera et al. v. Enríquez,* supra, a la pág. 338; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.,* 128 DPR 538, 549 (1991); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 281 (1990).

[51] *Flores v. Municipio de Caguas,* 114 DPR 521, 525 (1983); *Ramos Pérez v. Univisión,* 178 DPR 200, 215-216 (2010).

de Procedimiento Civil,[52] estarán obligadas a demostrar que tienen evidencia para sustanciar sus alegaciones.[53] Por tanto, como regla general, para derrotar una solicitud de sentencia sumaria, la parte opositora deberá presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente.[54]

Por otra parte, es menester subrayar que nuestro Tribunal Supremo ha indicado que el mecanismo de sentencia sumaria no es el apropiado para resolver casos en los cuales hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial.[55] De la misma manera, también ha razonado que "hay litigios y controversias que por la naturaleza de estos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones".[56]

En cuanto al proceso de revisión de las sentencias sumarias, nuestro Alto Foro ha sido enfático en que el Tribunal de Apelaciones debe:

> (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario;
>
> (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;
>
> (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y

---

[52] 32 LPRA Ap. V, R. 36.5.
[53] *Flores v. Municipio de Caguas*, supra, a la pág. 525; *Ramos Pérez v. Univisión*, supra, a la pág. 215-216.
[54] *Ramos Pérez v. Univisión*, supra, a la pág. 215; *Roldán Flores v. M. Cuebas*, supra, a la pág. 677.
[55] *Elías y otros v. Chenet y otros*, 147 DPR 507, 521 (1999); *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994); *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 663 (2017).
[56] *Elías y otros v. Chenet y otros*, supra, a la pág. 521, citando a *García López v. Méndez García*, 88 DPR 363, 380 (1963).

(4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[57]

Ahora bien, la sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que no han sido refutadas; (iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (iv) como cuestión de derecho, no proceda.[58] Además, al revisar la determinación del foro primario, respecto a una sentencia sumaria, estamos limitados de dos (2) maneras. *Primero,* solo podemos considerar los documentos que se presentaron ante el foro de primera instancia. Es decir, "las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentados oportunamente en el foro de primera instancia, ni pueden, por primera vez ante el foro apelativo, esbozar teorías nuevas o esgrimir asuntos nuevos".[59] *Segundo,* solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[60] Entiéndase, que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, ya que dicha tarea le corresponde al foro de primera instancia.[61] En consecuencia de lo anterior, se ha establecido como un interés apremiante del Estado el regular las relaciones

## C. La Ley Núm. 80 sobre Despido Injustificado

El despido ha sido definido como "la ruptura unilateral, que hace el patrono, del contrato individual de trabajo celebrado con uno

---

[57] *Roldán Flores v. M. Cuebas, et al.,* supra, 679. (Cita depurada); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118-119 (2015).

[58] *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 335-336 (2021).

[59] *Meléndez González et al. v. M. Cuebas,* supra, a la pág. 114. (Cita depurada).

[60] *Íd.,* a la pág. 115.

[61] *Íd.; Vera v. Dr. Bravo,* 161 DPR 308, 335 (2004).

o varios trabajadores".[62] La referida ruptura, puede conllevar, en numerosas ocasiones, a la pérdida del único medio para obtener los artículos y servicios necesarios para vivir.[63] En consecuencia de lo anterior, se ha establecido como interés apremiante del Estado el regular las relaciones obrero-patronales.[64] A esos fines, se aprobó la Ley Núm. 80, para proteger de una forma más efectiva los derechos de los obreros puertorriqueños, otorgar unos remedios más justicieros y desalentar la incidencia del despido injustificado.[65] De manera que, nuestro ordenamiento jurídico no prohíbe el despido de un empleado, si no que busca la protección de los derechos de los trabajadores, para así establecer un balance entre las relaciones obrero-patronales.[66]

A tales efectos, la Ley Núm. 80, dispone que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, el cual trabaje mediante remuneración de alguna clase, contratado sin tiempo determinado y que fuere despedido de su cargo sin justa causa, tendrá derecho a recibir de su patrono: (a) una cantidad equivalente a tres (3) meses de sueldo por concepto de indemnización, siempre y cuando haya culminado el periodo probatorio aplicable según se dispone en esta Ley, o el periodo probatorio distinto que las partes hayan estipulado, y (ii) una cantidad equivalente a dos (2) semanas de sueldo por cada año completo de servicio.[67]

Cabe resaltar que el referido estatuto no define lo que constituye un despido injustificado.[68] Ahora bien, sí establece que, "[s]e entenderá por justa causa para el despido aquella que no esté motivada por razones legalmente prohibidas y que no sean producto

---

[62] *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 374 (2001).
[63] *Íd.*
[64] *Íd.*
[65] Exposición de motivos de la Ley Núm. 80, *supra*, 29 LPRA sec.185a *et seq.*
[66] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 982 (2022).
[67] Artículo 1 de la Ley Núm. 80, *supra*, 29 LPRA sec. 185a.
[68] *Segarra Rivera v. Int'l Shipping et al.*, supra, a la pág. 983.

del mero capricho del patrono".[69] En específico, menciona (6) razones que se entenderán por justa causa, siempre que afecten el buen y normal funcionamiento de un establecimiento.[70] Entre estas se encuentran,

> (d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.
>
> (e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
>
> (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.[71]

Las precipitadas circunstancias, para justificar el despido, son escenarios de índole económica que puede enfrentar la operación diaria de una empresa.[72] Se ha entendido, pues, que las empresas pueden cesantear a sus empleados cuando enfrenten cualesquiera de estas.[73] Ahora bien, la Ley Núm. 80 exige que, si el despido está basado en alguno de los tres (3) antedichos escenarios, el patrono retenga con preferencia a los empleados con más antigüedad "siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos [. . .]".[74] En otras palabras, si dentro de los seis (6) meses de ocurrido un despido, la empresa adviene en la necesidad de emplear a una persona con labores iguales o similares a las que desempeñaba el despedido, en el momento de su cesantía, debe de contratar con

---

[69] Artículo 2 de la Ley Núm. 80, *supra*, 29 LPRA sec. 185b.
[70] *Íd.*
[71] *Íd.*
[72] *Segarra Rivera v. Int'l Shipping et al.*, supra, a la pág. 984.
[73] *Íd.*
[74] Artículo 3 de la Ley Núm. 80, *supra*, 29 LPRA sec. 185c.

preferencia a la persona recién despedida.[75] No obstante, lo anterior, la empresa deberá tomar en consideración, para contratar al cesanteado, su clasificación ocupacional, al igual que, deberá seguir el orden de antigüedad en la reposición.[76]

De otra parte, se ha razonado que, si la decisión del despido se toma como parte de una reorganización empresarial, esta debe ser *bona fide* y no producto del mero capricho del patrono.[77] Entiéndase que, el despido del empleado se deba a que la empresa optó por modificar su forma de hacer negocios, mediante cambios encaminados a optimizar sus recursos y aumentar sus ganancias, como lo son la eliminación de plazas, creando otras nuevas o funcionando algunas ya existes, como vehículo para enfrentar sus problemas financieros o de competitividad.[78] Ahora bien, para demostrar que la reorganización constituyó justa causa para el despido, el patrono deberá "presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad".[79] Asimismo, se ha establecido que el patrono que pretenda justificar el despido por disminución de ganancias "debe presentar evidencia que acredite la alegada disminución en la producción, ventas o ganancias".[80] Además, deberá establecer un nexo causal entre la disminución económica de la empresa y la razón del despido.[81] Ello, pues, se ha razonado que la disminución en producción únicamente será justa causa para un despido cuando "sea una sustancial al punto que atente contra la continuidad de la empresa".[82]

---

[75] Artículo 3 de la Ley Núm. 80, *supra.*
[76] *Íd.*
[77] *Segarra Rivera v. Int'l Shipping et al.*, supra, a la pág. 985.
[78] *Íd.*
[79] *Íd.*, a la pág. 986, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 427 (2013).
[80] *Segarra Rivera v. Int'l Shipping et al.*, supra, a la pág. 986, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra, a la pág. 426. (Cita depurada).
[81] *Segarra Rivera v. Int'l Shipping et al.*, supra, a la pág. 986.
[82] *Íd.*, a la pág. 986, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra, a la pág. 426.

Lo anterior, responde a que la Ley Núm. 80 e "invierte el orden de la prueba en casos civiles y le impone al patrono el deber de probar *in limine* que el despedido fue justificado".[83] Ahora bien, para que el empleado goce de la referida presunción debe demostrar que: (i) fue contratado por un comercio, industria u otro negocio; (ii) su contrato era por tiempo indeterminado; (iii) recibía una remuneración por su trabajo, y (iv) fue despedido.[84]

Por otro lado, precisa acentuar que, según la Ley Núm. 80, "[l]os años de servicio del empleado despedido sin justa causa se determinarán a base de todos los periodos de trabajo anteriores acumulados que el empleado haya trabajado para el mismo patrono antes de su despido [. . .]".[85] Ahora bien, la anterior determinación será de aplicación únicamente en los casos en los cuales la interrupción de la relación empleo no se haya extendido por más de dos (2) años y todos los servicios se hayan realizado en Puerto Rico.[86] Igualmente, huelga resaltar que "[l]a indemnización que establece el Artículo 1 [de la Ley Núm. 80] se pagará tomando como base el tipo de salario más alto devengado por el empleado dentro de los tres (3) años inmediatamente anteriores al momento de su despido".[87]

Finalmente, resulta importante mencionar que, es irrenunciable el derecho del empleado despedido de su cargo, sin que haya mediado justa causa, a recibir la indemnización que establece la Ley Núm. 80.[88]

### III

En el presente caso, la parte apelante, en sus cinco (5) señalamientos de error, nos invita a concluir que el foro primario incidió en emitir una sentencia sumaria en su contra y a favor del

---

[83] *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022), citando a *Romero et als. v. Cabrer Roig et als.*, 191 DPR 643, 652 (2014). (Énfasis omitido).
[84] *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 907 (2011).
[85] Artículo 1 de la Ley Núm. 80, *supra*.
[86] *Íd.*
[87] *Íd.*, Artículo 4, 29 LPRA sec. 185d.
[88] *Íd.*, Artículo 9, 29 LPRA sec. 185i.

apelado. En vista a que, para determinar la comisión de los aludidos errores por parte del tribunal *a quo* era necesario examinar la procedencia de la solicitud de sentencia sumaria incoada por el apelado, nos dispusimos a examinar *de novo* este escrito, así como el pliego en oposición y en solicitud de sentencia sumaria a su favor presentada por la parte apelante. Tras revisar los autos del presente caso y el derecho aplicable, se desprende que el apelado cumplió a cabalidad con los requisitos exigidos por la Regla 36.2 de Procedimiento Civil,[89] al instar su solicitud de sentencia sumaria. Ahora bien, de un examen de la oposición de la parte apelante, aunque esta esencialmente cumplió con los requisitos establecidos en la Regla 36.3 (B) de Procedimiento Civil,[90] adelantamos que no logró establecer controversias de hechos materiales suficientes que ameritaran declarar sin lugar el petitorio sumario del apelado. Por otra parte, cabe resaltar que en la solicitud de sentencia sumaria a su favor que acompañó su escrito en oposición, la parte apelante fue en contra de sus propios actos, al esgrimir que se encontraban en controversia una serie de hechos que en su oposición ya había indicado que *no estaban controvertidos*. Además, no hizo referencia a ninguna prueba que demostrara la razón por la cual había controversia sobre los mismos. Establecido lo anterior, procedemos a discutir la procedencia de los errores planteados por la parte apelante.

En su ***primer*** señalamiento de error, la parte apelante esgrime que el foro primario incidió al determinar que el apelado fue despedido injustificadamente, sin considerar la prueba presentada en su escrito en oposición y en solicitud de sentencia sumaria a su favor. De otra parte, en su ***segundo*** señalamiento de error, arguye que el referido tribunal falló al no incluir ciertas determinaciones de

---

[89] 32 LPRA Ap. V, R. 36.2.
[90] *Íd.,* R. 36.3.

hechos las cuales fueron fundamentadas con prueba y no fueron debidamente controvertidas. Puesto a que ambos errores están íntimamente relacionados los atenderemos en conjunto.

De entrada, reiteramos que este caso tuvo sus inicios cuando el aquí apelado, el señor López Acevedo, presentó una *Demanda* en contra de RICA CHINA en la cual alegó haber sido despedido injustificadamente y en represalias. Indicó que trabajaba a tiempo completo para el restaurante y que realizaba diversas funciones, entre ellas: (i) supervisar a otros empleados; (ii) servicio al cliente, y (iii) otras funciones relacionadas a la operación del restaurante. No obstante, fue despedido por razón de que el restaurante en cuestión cerraría las operaciones de entrega de comida.

Posteriormente, el apelado presentó una *Querella Enmendada* en la cual eliminó la causa de acción al amparo de la Ley de Represalias. De manera que, únicamente mantuvo sus alegaciones sobre despedido sin justa causa, basadas en la Ley Núm. 80.[91]

Tras varias incidencias procesales, innecesarias de pormenorizar, el apelado presentó una *Moción de sentencia sumaria,* en la cual alegó que no existía controversia de que su despido fue uno arbitrario y caprichoso. Acompañó su pliego con prueba siguiente: (i) Exhibit 1: Certificación de empleo del señor López Acevedo, suscrita por el señor Chang; (ii) Exhibit 2: Misiva intitulada "Memorando", dirigida al señor López Acevedo y suscrita por el señor Chang; (iii) Exhibit 3: Documento a manuscrito con cómputo de las compensaciones por bono, vacaciones y enfermedad del señor Lopez Acevedo y la señora Montañez Torres; (iv) Exhibit 4: Cheque por la cantidad de $1,336.00 dólares dirigido al señor López Acevedo, suscrito por el señor Chang, y cheque por la cantidad de $978.00 dirigido a la señora Montañez Torres, suscrito igualmente por el

---

[91] 29 LPRA sec. 185a *et seq.*

señor Chang. Por otra parte, el apelado anejó a su petitorio sumario una Deposición del señor Chang, tomada el 4 de diciembre de 2024, a las 12:04 p.m.

En reacción, la parte apelante incoó su *Contestación a la moción de sentencia sumaria y solicitud de sentencia sumaria.* En su oposición a la solicitud de sentencia sumaria, esbozó como único asunto litigioso en controversia si hubo, en este caso, un despido injustificado. Arguyó que ciertos hechos se encontraban incontrovertidos y otros no. Ahora bien, en la solicitud de sentencia sumaria a su favor, planteó que se encontraban en controversia la mayoría de los hechos que había ya indicado en su oposición que no estaban controvertidos. Por otra parte, tanto en su oposición como en su solicitud de sentencia sumaria, manifestó que se debía desestimar la querella de manera sumaria puesto a que, en este caso, no hubo un despido injustificado. Ello, puesto a que el despido del apelado se debió a una reorganización necesaria debido la reducción del volumen de entrega de comidas. En apoyo a sus planteamientos, acompañó su escrito con la prueba siguiente: (i) Anejo 1: Deposición del señor Chang, tomada el 4 de diciembre de 2024, a las 12:04 p.m.; (ii) Anejo 2: Deposición del señor Chang, tomada el 4 de diciembre de 2024, a las 11:11 a.m.; (iii) Deposición del señor López Acevedo, con fecha del 4 de diciembre de 2024, y (iv) Deposición de la señora Montañez Torres, con fecha del 4 de diciembre de 2024.

Examinado los antedichos escritos, el tribunal *a quo* emitió la sentencia que nos ocupa. Mediante el referido dictamen declaró *Con Lugar* la *Querella* presentada por el señor López Acevedo y condenó a RICA CHINA a pagar una cantidad por concepto de mesada y otra por concepto de honorarios de abogado. Subsiguientemente, a solicitud del apelado, el referido foro enmendó la referida sentencia

a los únicos fines de corregir el resultado del cálculo realizado para computar la mesada, por haberse cometido un error.

Conforme expusimos en nuestra previa exposición doctrinal, entre los escenarios que la Ley Núm. 80 subraya que pueden constituir un despido justificado se encuentra la reorganización y la disminución de producción.[92] Ahora bien, el patrono que alegue que el despido fue consecuencia de una reorganización empresarial deberá demostrar que la reorganización fue una *bona fide* y no producto del mero capricho del patrono.[93] Además, deberá "presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad".[94] Igualmente, el patrono que plantea que el despido se realizó por razón de disminución de ganancias "debe presentar evidencia que acredite la alegada disminución en la producción, ventas o ganancias".[95] Asimismo, el patrono tiene que establecer un nexo causal entre la disminución de ganancias y la razón del despido.[96]

Aunque en el escrito en oposición y la solicitud de sentencia sumaria la parte apelante arguye que el despido de señor López Acevedo se debió a una reorganización necesaria debido la reducción del volumen de entrega de comidas, tras un minucioso estudio de los autos ante nuestra consideración, así como el expediente electrónico del caso, disponible a traces del SUMAC, colegimos que la parte apelante no presentó ninguna prueba fehaciente que acreditara que el cierre de las operaciones de entrega de comida y el posterior uso de empresas como "Uber" y "Doordash", quienes ofrecen servicios de entrega a domicilio mediante una aplicación móvil, fue por razón de una disminución de ganancias *bona fide*.

---

[92] Artículo 2 de la Ley Núm. 80, *supra*.
[93] *Segarra Rivera v. Int'l Shipping et al.*, supra, a la pág. 985.
[94] *Íd.*, a la pág. 986, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra, a la pág. 427.
[95] *Segarra Rivera v. Int'l Shipping et al.*, supra, a la pág. 986, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra, a la pág. 427. (Cita depurada).
[96] *Segarra Rivera v. Int'l Shipping et al.*, supra, a la pág. 986,

Aunque en la Deposición tomada al señor Chang, el 4 diciembre de 2024, a la 11:11 a.m., este expresó que decidió cerrar la operación de 'delivery' por los gastos y porque no era rentable,[97] esto constituyó una mera alegación que no fue apoyada con prueba acreditativa de que, en efecto, la operación de entrega de comida estaba generando una disminución económica sustancial, al punto que atentó contra la continuidad de la empresa, según requiere el estándar de prueba en este tipo de casos.[98] En consecuencia, dado a que en este caso no hubo controversia en cuanto a que el apelado: (i) fue contratado por RICA CHINA por tiempo indeterminado; (ii) recibía una remuneración por su trabajo; (iii) fue despedido,[99] y que la parte apelante no logró justificar el despido por razón de una reorganización o por disminución de ganancias, ameritaba que se declara *Con Lugar* la querella por despido injustificado según procedió el tribunal *a quo*.

En el recurso ante nos, la parte apelante sostiene que en su oposición esgrimió una serie de hechos materiales adicionales sobre los cuales presuntamente no había controversia, de manera que el tribunal debió darlos por admitidos, puesto a que no fueron controvertidos por el apelado. Ellos son:

19. La operación de delivery con empleados del Querellado cerró y no ha vuelto a operar. [. . .].

20. Rica China Restauran utiliza el sistema de Door Dash para que hagan los deliveries. [. . .].

21. El Querellado decidió cerrar su operación interna de delivery porque tenía demasiados gastos, no era rentable y se sustituyó por el sistema de Door Dash. [. . .].

22. El servicio de delivery interno de Rica China generaba mucha presión, problemas con y entre los empleados, quejas de los clientes, era muy ineficiente porque tardaban mucho los deliveries. [. . .].

---

[97] Apendice del recurso, a la pág. 128.
[98] *Segarra Rivera v. Int'l Shipping et al.*, supra, a la pág. 986, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra, a la pág. 426.
[99] Véase *Rivera Figueroa v. The Fuller Brush Co.*, supra, a la pág. 907.

6. Cuando la operación de delivery con empleados del Querellado cerró no había trabajo en la cocina disponible. [. . .].[100]

En cuanto a los hechos materiales adicionales enumerados 19, 20 y 6, precisa puntualizar que, tras examinar los autos, se desprende que ciertamente el apelado no controvirtió estos hechos propuestos por la parte apelante. Ahora bien, el foro primario no estaba obligado a acoger en sus determinaciones de hecho los hechos propuestos por las partes. Igualmente, cabe resaltar que, del foro primario haber acogido los aludidos hechos, esto no cambiaría el resultado de la acción del título, ya que los hechos propuestos por la parte apelante no acreditaban la ocurrencia de una reorganización *bono fide* o una disminución de ganancia de la empresa en cuestión. De manera que, el señalamiento de error no amerita que intervengamos con el dictamen emitido por el tribunal. En consideración a lo anterior, precisa recordar que, en el manejo de los casos ante su consideración, el tribunal de instancia tiene amplia discreción. Por ende, los Tribunales Apelativos no debemos pretender conducir ni manejar el trámite ordinario de los casos que atiende la primera instancia judicial. Ello, puesto a que el foro primario es el que mejor conoce las particularidades del caso.[101] Más aún, cuando, a este foro apelativo únicamente le es permitido, en la revisión de una sentencia sumaria, determinar si existe o no alguna controversia de hechos materiales o esenciales y si se aplicó el derecho correctamente.[102] En otras palabras, el Tribunal Apelativo está impedido de adjudicar los hechos materiales en disputa, puesto a que esta tarea le corresponde al tribunal de instancia.[103]

De otra parte, en lo referente a los hechos adicionales propuestos enumerados 21 y 22, huelga acentuar que la parte

---

[100] Apéndice del recurso, a las págs. 77-78.
[101] *Mejías v. Carrasquillo*, 185 DPR 288, 306-307 (2012).
[102] *Meléndez González et al. v. M. Cuebas*, supra, a la pág. 114.
[103] *Íd.*

apelante no hizo referencia a ninguna prueba que los sostuviera. Peor aún, la parte apelante indicó que no estaban en controversia "porque surgen de las transcripciones de las deposiciones presentadas como evidencia presentada en el caso de Yanilka Montañez Vs Huang X Chang Corp. h/n/c Rica China Restaurant, Aseguradora XYZ, TA2024CV01130".[104] Según adelantamos, la señora Montañez Torres presentó una Querella **independiente** a la acción de título, por lo cual el foro primario no podía tomar conocimiento judicial de la evidencia que se presentó específicamente en el alfanumérico TA2024CV01130. Por ende, si la parte apelante interesaba que la referida evidencia fuera considerada en la presente acción, debió adjuntarla a su moción en oposición a la solicitud de sentencia sumaria que nos ocupa.

Por todo lo antes expuesto, disponemos que el *primer* y *segundo* error esgrimido por la parte apelante no fueron cometidos.

De otra parte, RICA CHINA sostiene, en su *tercer* señalamiento de error, que el foro de instancia falló en sus determinaciones de hechos. En específico, indicó que la determinación de hecho número 1 es incorrecta puesto a que la querellada es HUANG X CHANG CORP. H/N/C RICA CHINA RESTAURANT y el señor Chang es el propietario. Puntualizamos que en su oposición a la sentencia sumaria la parte apelante indicó que la aludida determinación de hecho no estaba en controversia. Únicamente acentuó a través de una nota al calce: "El nombre correcto del Sr. Chang es Huan sin la g al final, Sr. Huan Chang".[105]

Por otro lado, la parte apelante plantea que la determinación de hecho número 3, la cual afirma que "[e]l querellante trabajó en Rica China Restaurant por 15 años.", era un hecho controvertido. En su oposición a la solicitud de sentencia sumaria que nos ocupa,

---

[104] Apéndice del recurso, a las págs. 77-78.
[105] *Íd.,* a la pág. 76.

para controvertir este hecho, hizo referencia a una parte de la Deposición del señor Chang, tomada el 24 de diciembre de 2024, a las 12:04p.m., en la que este expresa que el apelado no llevaba trabajando en RICA CHINA por un periodo de quince (15) años.[106] Sin embargo, en esa misma parte de la deposición, el señor Chang admite que firmó una certificación de empleo la cual detallaba que el señor López Acevedo había trabajado en el referido restaurante por alrededor de quince (15) años.[107] A nuestro juicio, dado a que el señor Chang admitió que firmó un documento el cual expresaba que el apelado llevaba quince (15) años trabajando para RICA CHINA, esta parte de la deposición sin más no tenía el efecto de controvertir la determinación de hecho número 3, sino reafirmarla. Ahora bien, de un análisis de la totalidad del expediente del caso, coincidimos en que esta determinación de hecho fue controvertida por la prueba. Lo anterior, será discutido a fondo, cuando pasemos a elaborar la procedencia del *quinto* error esgrimido por la parte apelante.

Por último, la parte apelante, arguye que el foro primario falló en la determinación de hecho número 14,[108] la cual indica que RICA CHINA no había sufrido una disminución de ingresos en los pasados cinco (5) años. Para sustentar la aludida determinación de hecho el apelado hizo referencia a una parte de la Deposición del señor Chang del 4 de diciembre de 2024, a las 12:04 p.m. en la cual se le pregunta en cuanto a la operación de RICA CHINA, si las ventas habían subido o bajado. El señor Chang respondió que las ventas habían estado iguales, y que, al momento, habían subido un "chispito más".[109] En su moción en oposición y en solicitud de sentencia sumaria, la parte apelante planteó que, en la respuesta dada por el señor Chang en la

---

[106] Apéndice del recurso, a la pág. 89.

[107] *Íd.*, a las págs. 90-91.

[108] Puntualizamos que la parte apelante en su *Apelación* erróneamente la clasifica como la determinación de hecho número 13. Sin embargo, al revisar los autos, se desprende que se refiere a la determinación número 14. Véase Recurso de Apelación, a la pág. 14.

[109] Apéndice del recurso, a la pág. 54.

referida deposición, este detalló como se encontraba el negocio y no la operación del 'delivery'. Además, la parte apelante hizo referencia a una parte de la misma deposición, en la cual el señor Chang menciona que el 'delivery' "ha bajado un montón". A nuestro juicio, lo anterior, no controvierte el hecho de que el señor Chang expresó que no hubo cambios significativos en cuanto a las ventas de RICA CHINA.

Habiendo examinado detenidamente lo aducido por parte apelante en cuanto a las determinaciones de hecho, entendemos que el **tercer** señalamiento de error *se cometió en parte.* Sin embargo, ello no amerita la revocación total de la sentencia, sino en parte, lo que se discutirá posteriormente.

Pasando entonces a evaluar el **cuarto** señalamiento de error esgrimido por la parte apelante, subrayamos que, en este, se plantea que foro primario incidió al concluir que RICA CHINA le debía reponer el puesto al apelado. Particularmente, puesto a que la clasificación ocupacional del apelado cesó permanente.

De entrada, puntualizamos que el tribunal no determinó que RICA CHINA le debía reponer el empleo al señor López Acevedo. El tribunal *a quo,* únicamente razonó que la parte apelante no logró demostrar que realizó esfuerzos para reubicar al apelado en otra posición basado en sus habilidades y antigüedad, lo cual es cierto y pertinente para este caso[110]

La Ley Núm. 80 le exige al patrono que despide a un empleado por razón de reorganización o reducción de ganancias que, en los próximos seis (6) meses de ocurrido el despido, haga esfuerzos de reubicarlo en un puesto vacante que pueda ser desempañado por este y que se encuentre dentro de su clasificación ocupacional.[111] Sobre este particular, la parte apelante hace referencia a la

---

[110] Apéndice del recurso, a la pág. 279.
[111] Artículo 3 de la Ley Núm. 80, *supra.*

Deposición del señor Chang, tomada el 4 diciembre de 2024, a las 12:04 p.m., en la cual manifiesta que le ofreció trabajo al señor López Acevedo en la cocina.[112] Sin embargo, de esta expresión no quedó claro si el referido ofrecimiento fue antes o posterior a la cesantía. Aparte de esto último, no se demostró de ninguna otra manera que el patrono hizo esfuerzos razonables para reubicar al apelado. Por otro lado, en la Deposición tomada al señor López Acevedo, el 4 de diciembre de 2024, este expresa que nunca le ofrecieron el puesto en la cocina.[113]

En vista de todo lo anterior, coincidimos que el *cuarto* error señalado por la parte apelante *no se cometió*. Ello por entender que el foro primario no ordenó reponer al señor López Acevedo a ningún puesto.

Finalmente, en lo referente al *quinto* error esbozado por la parte apelante, reseñamos que esta aduce que el foro primario incidió al imponerle una cuantía de compensación por mesada. Ello, dado a que no era cierto y se había probado mediante los testimonios presentados por medio de deposiciones que el señor López Acevedo no llevaba quince (15) años trabajando para RICA CHINA.

Según adelantamos, en la Deposición del señor Chang, tomada el 4 de diciembre de 2024, a las 12:04 p.m., este admitió que firmó una certificación de empleo en la cual se detallaba que el apelado había trabajado en RICA CHINA por alrededor de quince años.[114] Ahora bien, huelga puntualizar que, más adelante en la deposición, el señor Chang alegó que el señor López Acevedo no llevaba quince (15) años trabajando para el restaurante, sino que lo expresó así en la certificación de empleo para que este último cualificara para las ayudas del gobierno.[115]

---

[112] Apéndice del recurso, a la pág. 252.
[113] *Íd.*, a la pág. 174.
[114] *Íd.*, a las págs. 90-91.
[115] *Íd.*

Por otro lado, en la Deposición tomada al señor López Acevedo el 4 de diciembre de 2024, este manifestó que conoce al señor Chang aproximadamente desde el año 2002 y que durante estos años trabajó con él en dos (2) ocasiones, pero renunció.[116] Luego, expresó que cuando empezó a trabajar con el señor Chang estuvo unos tres (3) años, sin embargo, luego, se fue y estuvo como uno (1) a dos (2) años fuera.[117] Posteriormente, indicó que volvió a trabajar con el señor Chang en el año 2011, y en tres (3) ocasiones se fue y volvió.[118] No obstante, aclaró que, desde el año 2011 al 2024, estuvo trabajando "corrido" para el señor Chang, y que, si se fue, nunca fue más de dos (2) meses.[119]

Según reseñamos en nuestra previa exposición doctrinal, la Ley Núm. 80 indica que "[l]os años de servicio del empleado despedido sin justa causa se determinarán a base de todos los periodos de trabajo anteriores acumulados que el empleado haya trabajado para el mismo patrono antes de su despido [. . .]".[120] Sin embargo, para el anterior cómputo se tomará en cuenta que la interrupción de la relación de empleo no se haya extendido por más de dos (2) años.[121]

Colegimos que por lo antes expuesto hay una controversia genuina de hecho en cuanto al tiempo que el señor López Acevedo estuvo trabajando en RICA CHINA, sin una interrupción en la relación de empleo de más de dos (2) años, lo cual amerita la intervención del foro primario y lo cual nos lleva forzosamente a concluir que el *quinto* error esgrimido por la parte apelante se *cometió*.

---

[116] Apéndice del recurso, a la pág. 174.
[117] *Íd.*, a la pág. 175.
[118] *Íd.*
[119] *Íd.*
[120] Artículo 1 de la Ley Núm. 80, *supra*.
[121] *Íd.*

Sabido es que, cuando el Tribunal está ante un caso claro, en el cual tenga ante sí la verdad de todos los hechos pertinentes, tiene la facultad de disponer una controversia por vía sumaria.[95] Ahora bien, este mecanismo procesal no será el apropiado cuando para disponer sobre una controversia es esencial el factor de credibilidad.[122] Es por lo anterior, y por todo lo antes expuesto que, coincidimos en que, en este caso, se hace necesario confirmar el dictamen emitido por el foro primario, puesto a que no se logró probar que el despido del señor López Acevedo fue uno justificado por una reorganización o disminución de ganancias *bona fide*. De manera que, no había impedimento para dictar sentencia sumaria. Sin embargo, ante la controversia de hecho que se generó mediante la prueba, amerita que se revoque en parte el dictamen a los fines de que se celebre una vista evidenciaria para que el tribunal *a quo* pueda resolver la controversia en cuanto a los años que el apelado trabajó para RICA CHINA y el tiempo transcurrido entre las interrupciones a la relación de empleo, para que, así, el referido foro pueda justamente computar la cantidad por concepto de mesada que se impondrá a favor del apelante.

IV

Por los fundamentos que anteceden, se *confirma* el dictamen emitido a los fines de haber declarado *Ha Lugar* la querella y determinar que el despido fue injustificado, empero, se *revoca* el remedio emitido. En consecuencia, se devuelve el caso al tribunal de instancia para que, a la brevedad, celebre una vista evidenciaria producto de la cual pueda determinar la cantidad de años que el señor López Acevedo trabajó para RICA CHINA, y el tiempo trascurrido entre cada interrupción a la relación de empleo, de

---

[122] *Elías y otros v. Chenet y otros,* supra, a la pág. 521; *Soto v. Hotel Caribe Hilton,* supra, a la pág. 301; *Velázquez Ortiz v. Mun. de Humacao,* supra, a la pág. 663.

manera que pueda computar la cantidad por concepto de mesada que se impondrá a favor de la parte apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones